No. 43,882

Bertha A. Applehans, *Appellee*, v. Chas. O. Butner, d/b/a Butner's IGA, and State Automobile & Casualty Underwriters, *Appellants*.

(396 P. 2d 355)

Opinion filed November 7, 1964.

*James E. Benfer*, of Topeka, argued the cause, and *Harold E. Doherty* and *Ernest J. Rice*, both of Topeka, were with him on the brief for the appellants.

*George E. McCullough*, of Topeka, argued the cause, and *W. L. Parker, Jr.*, *Robert B. Wareheim*, *Reginald LaBunker*, and *M. John Carpenter*, all of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

Robb, J.: This is an appeal in a workmen's compensation proceeding from the trial court's holding that an award for temporary total loss of use of a scheduled member is not subject to review and modification under our statutes, which reversed the examiner and commissioner (hereafter referred to as director) who had previously held to the contrary.

A very brief statement of salient facts appears to be necessary in order to make clear a somewhat unusual case. Claimant, who was a meat wrapper for respondent Butner, testified that on November 27, 1959, while she was placing packages of bacon into a case, her left hand snapped. She immediately notified one of the department managers, the general manager, and the store owner. On November 28, 1959, claimant was taken to St. Francis Hospital where she was seen by Doctor Weber and Doctor Cavanaugh. A cast was placed on her left hand by Doctor Cavanaugh and she then returned to her work and continued to work until November 30, 1959. Thereafter because of pain in her left wrist she was off work from December 1, 1959, through January 17, 1960, when at

respondent Butner's insistence, she returned to work. On April 27, 1960, increased pain in her left hand forced her to quit work again and in May, 1960, she was hospitalized and operated for removal of a ganglion. She received post-operative treatment from Doctor Cavanaugh until September 26, 1960, when he thought she could return to work.

On March 14, 1961, the director found claimant was temporarily totally disabled from December 1, 1959, through January 17, 1960, and that thereafter she had a *temporary total loss of use of the left lower arm* from April 28, 1960. The award reads:

". . . for *temporary total loss of use of the left lower arm, said compensation to be at the rate of $38.00* per week for not to exceed 200 weeks. As of March 15, 1961, 51.86 weeks' compensation at the said rate are due in the amount of $1,970.68, less compensation heretofore paid in the amount of $1,026.00, leaving a balance of $944.68 which is ordered to be paid the claimant in one lump sum. The remaining 148.14 weeks' compensation is ordered paid the claimant at the rate of $38.00 per week until fully paid or until the further order of the Commissioner."

Respondents subsequently made application for an order modifying the award of March 14, 1961, and on June 23, 1961, the director found that an award for *temporary total loss of use of a scheduled member is subject to review and modification* but that the evidence did not show justification for review and the application was denied.

On January 29, 1962, respondents filed a second application to review and modify the award and claimant sought to strike it from the file because there were no grounds upon which an award for a scheduled injury may be reviewed and modified. At first blush it seems that respondents' theory of this case is correct but it must be kept in mind that G. S. 1961 Supp., 44-528 granting review, modification or cancellation of an award under some circumstances, in its final proviso reads:

". . . That the provisions of this section shall not apply to an award of compensation provided for in the schedule of specific injuries in section 44-510 of the General Statutes Supplement of 1953, as amended, or any amendments thereto."

In determining whether this appeal may correctly be brought under the above proviso we shall turn to G. S. 1961 Supp., 44-510 (3) (c) which, in pertinent part, reads:

"(12) For the loss of a forearm, sixty per cent (60%) of the average weekly wages during two hundred (200) weeks.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(21) Permanent loss of the use of a . . . forearm. . . shall be equivalent to the loss thereof."

Thus by statutory enactment the determinative question here is not whether an award is for temporary or permanent, partial or total loss, but whether a review will lie after an award for a scheduled injury has been allowed.

The same question confronted this court in *Rhea v. Kansas City Power & Light Co.*, 176 Kan. 674, 272 P. 2d 741, where it was held that a temporary total loss of use of a foot, as well as permanent partial loss of the use thereof, is a scheduled injury under the workmen's compensation act. (Syl. ¶ 1.) See, also, *Dunlap v. Crown Drug Co.*, 185 Kan. 494, 345 P. 2d 657.

Matters such as that with which we are presently concerned are largely for legislative, not judicial, determination, and it is not the province of the judiciary to determine the wisdom of legislation, but in view of the cited authorities and the fact that the legislature has not seen fit to change the statutes in any way by subsequent enactments, it can only be assumed such interpretations of these statutes have met with legislative approval.

The judgment of the trial court, therefore, is approved.

FONTRON, J. concurring: I am unable to convince myself that "a temporary total loss of use" of an arm, or any other specified member of the human body, is a scheduled injury coming within the terms of G. S. 1961 Supp., 44-510 [3 (c) (21)] and, as such, not susceptible to review and modification. The foregoing statute provides that "permanent," not "temporary" loss, of the use of a member shall be equivalent to the loss of the member itself, and I cannot logically equate the terms. As I view the two adjectives, they are not equivalents, but opposites.

To me, it would seem far more logical to say that a temporary total loss of use of a specific member of the body constitutes a temporary impairment of the body as a whole rather than a total loss of use of the member. However, I recognize that the sense of our former decisions is that a scheduled injury includes the temporary total loss of use of the specified member and, on this basis, I will concur in the result reached herein.